STATE OF NORTH CAROLINA v. STEVEN CRAIG WILSON

No. 38

(Filed 4 January 1979)

1. **Criminal Law § 66.8— taking of defendant's photograph—"evidentiary use"**

Defendant's contention that a photograph taken prior to his arrest and used in a pretrial photographic identification procedure was illegally taken in contravention of the provisions of G.S. 15A-502 is without merit, since the photograph under consideration was taken and used for an "evidentiary use" as provided in the statute.

2. **Criminal Law §§ 66.8, 66.16— photographing of defendant—independent origin of in-court identification**

The taking of defendant's photograph prior to his arrest was not impermissible and illegal so as to taint in-court identification testimony where there was ample probable cause to arrest defendant on the charge of rape; he voluntarily accompanied officers to the police station where he was advised of his *Miranda* rights and cited for a minor traffic violation; he was told on two occasions prior to being photographed that the police were investigating a sexual assault and that he and his automobile fit the description of the suspect furnished by the victim; and there was evidence from which it could be inferred that defendant consented to have his photograph taken. Even if the taking of defendant's photograph prior to trial was impermissible and illegal, the in-court testimony was nevertheless properly admitted since such testimony was of independent origin based on what the witnesses saw on the day of the alleged crime.

3. **Constitutional Law § 29— photographing of defendant—absence of girlfriend—no denial of constitutional rights**

Defendant's contention that the court erred in admitting certain evidence because it was obtained in violation of his constitutional rights as a result, among other things, of his being illegally photographed and of the denial of his request for the presence of his girlfriend after he had accompanied officers to the police station but before he was placed under arrest is without merit, since defendant was not entitled to the assistance of counsel at the photographing session, much less to the presence of his girlfriend, and the absence of the girlfriend could not be attributed to any fault of the police officers who made every reasonable effort to accommodate defendant's wishes to have her present.

4. **Rape § 11— penetration—sufficiency of evidence**

In a prosecution for rape there was plenary testimony by the victim as well as medical testimony from which the jury could reasonably infer that the victim was penetrated.

5. **Criminal Law § 26.5; Kidnapping § 1— kidnapping and rape—transporting victim six blocks—separate offenses—no double jeopardy**

Defendant was not subjected to double jeopardy when he was convicted of kidnapping and rape arising out of one transaction where the victim was by

trick enticed into defendant's automobile and transported about six blocks away where, by force and by threat of the use of a knife, she was raped; during a period of about 45 minutes the victim was under the complete dominion and control of defendant; the restraint accompanying the rape was not an inherent, inevitable feature of the kidnapping; and the kidnapping was thus a separate, complete act independent of the later committed crime of rape.

6. **Constitutional Law § 28; Rape § 8 — statutory rape — gender based statute — no violation of equal protection clause**

Defendant's contention that G.S. 14-21(1)(a), providing the death penalty for rape of a virtuous female child under the age of 12 by a person over the age of 16, is unconstitutional because it is a gender based criminal law violative of the equal protection clause of the Fourteenth Amendment is without merit since the protection of young females from sexual intercourse and the concomitant potential for physical injury is a legitimate legislative concern, and, for physiological as well as sociological reasons, there is no need by males for protection against females from rape which would be sufficient to demand legislative attention.

Justices BRITT and BROCK took no part in the consideration or decision of this case.

APPEAL by defendant from *Barbee, S.J.,* 9 January 1978 Session of LENOIR Superior Court.

Defendant was charged in separate bills of indictment, proper in form, with kidnapping and rape. The indictments were consolidate for trial.

The State offered evidence tending to show that on 11 September 1977, defendant fraudulently enticed Tanya Joyce Suggs [Tanya], aged 9, to enter his automobile and then transported her to the Kinston High School grounds where by use of a knife and force he had sexual intercourse with her. In addition to the evidence given by the victim, there was eyewitness testimony by Ethel Jones to the effect that on 11 September 1977 she saw Tanya Joyce Suggs enter a green Buick automobile which was being operated by defendant. Police officers testified in corroboration of the witnesses Suggs and Jones concerning prior statements made by the witnesses to them.

Dr. Rudolph I. Mintz, Jr., who was qualified as a medical expert in gynecology, testified that he examined Tanya Suggs on 11 September 1977 and found lacerations and bruises around the entrance to the vagina. Spermatozoa was also found in the vagina.

The State offered other cumulative and corroborative evidence.

Defendant did not testify but offered evidence in the nature of an alibi. Other evidence pertinent to decision will be stated in our consideration of defendant's assignments of error.

The jury returned verdicts of guilty of first degree rape and guilty of kidnapping. Defendant appealed from judgments sentencing him to a life sentence on the first degree rape charge and a concurrent life sentence on the kidnapping charge.

*Rufus L. Edmisten, Attorney General, by Rudolph A. Ashton III, Associate Attorney, for the State.*

*James D. Llewellyn for defendant appellant.*

BRANCH, Justice.

Defendant assigns as error the denial of his motions to suppress the in-court identification testimony of Tanya Joyce Suggs and Ethel Jones. We are not concerned with evidence of the actual pretrial photographic procedures since the State did not offer such evidence before the jury. Prior to trial, defendant moved to suppress the testimony of the victim Tanya Suggs, and Judge Brannon properly conducted a voir dire hearing to determine the admissibility of this testimony. During the trial, a similar motion was lodged, and a voir dire hearing was conducted by Judge Barbee concerning the admissibility of identification testimony of Ethel Jones.

[1] In support of this assignment of error, defendant argues that the in-court identification testimony was admitted contrary to statute and in violation of his constitutional rights. We first consider defendant's contention that the photograph taken prior to his arrest for rape was illegally taken in contravention of the provisions of G.S. 15A-502 which provides:

> § 15A-502. *Photographs and fingerprints.* —(a) A person charged with the commission of a felony or a misdemeanor may be photographed and his fingerprints may be taken for law-enforcement records only when he has been:
>
> (1) Arrested or committed to a detention facility, or

(2) Committed to imprisonment upon conviction of a crime, or

(3) Convicted of a felony.

(b) This section does not authorize the taking of photographs or fingerprints when the offense charged is a misdemeanor under Chapter 20 of the General Statutes, "Motor Vehicles," for which the penalty authorized does not exceed a fine of five hundred dollars ($500.00), imprisonment for six months, or both.

(c) This section does not authorize the taking of photographs or fingerprints of a "child" as defined for the purposes of G.S. 7A-278(2), unless the case has been transferred to the superior court division pursuant to G.S. 7A-280.

(d) This section does not prevent the taking of photographs, moving pictures, video or sound recordings, fingerprints, or the like to show a condition of intoxication or for other evidentiary use.

(e) Fingerprints or photographs taken pursuant to subsection (a) may be forwarded to the State Bureau of Investigation, the Federal Bureau of Investigation, or other law-enforcement agencies.

The Official Commentary on this statute states:

This section carries forward the concept of the present provisions of the former first two paragraphs of § 114-19 in a more logical location than in the Chapter dealing with the Department of Justice. Those provisions have been simplified and broadened in some respects, but restricted as to motor vehicle and juvenile offenses.

We believe that the Official Commentary correctly states the Legislature's intent.

[1, 2] We have held that the provisions of G.S. 114-19 were concerned with the compilation and preservation of records and did not create a new exclusionary rule of evidence. *State v. Accor* and *State v. Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970); *State v. Strickland*, 276 N.C. 253, 173 S.E. 2d 129 (1970). In our opinion, the simplified and broadened G.S. 15A-502 does not now create an

exclusionary rule of evidence. To the contrary, the statute affirm-
atively states that "[t]his section does not prevent the taking of
photographs . . . to show a condition of intoxication *or for other
evidentiary use*." [Emphasis ours.] Certainly the photograph
under consideration was taken and used for an "evidentiary use."
Thus, the first portion of defendant's argument must fail. We,
therefore, turn to the question of whether the pretrial
photographic procedures violated defendant's *constitutional*
rights so as to render the in-court identification testimony inad-
missible.

It is well established that evidence unconstitutionally ob-
tained must be excluded. *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed. 2d
1081, 81 S.Ct. 1684 (1961); *State v. Henderson*, 285 N.C. 1, 203 S.E.
2d 10 (1974), *death sentence vacated*, 428 U.S. 902. The test of ex-
clusion under the due process clause is whether the totality of the
circumstances reveals pretrial procedures so unnecessarily sug-
gestive and conducive to irreparable mistaken identification so as
to offend fundamental standards of decency, fairness and justice.
*Foster v. California*, 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127
(1969); *State v. Henderson, supra; State v. Haskins*, 278 N.C. 52,
178 S.E. 2d 610 (1971). It is equally well settled that an in-court
identification is properly admitted into evidence even when there
is an improper or illegal out-of-court identification procedure
when the court finds upon competent voir dire evidence that the
in-court identification is of independent origin and based on the
witness's observations at the time and place of the crime. *State v.
Montgomery*, 291 N.C. 235, 229 S.E. 2d 904 (1976); *State v.
Henderson, supra; State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677
(1972).

On voir dire before Judge Brannon, Tanya Suggs testified, in
substance, that on 11 September 1977 at about 11:00 a.m. she was
walking home when defendant, who was sitting in a dark green
225 Buick Electra, called her and said that he had something for
her father and asked her to accompany him. She entered the
automobile but instead of going to her residence he drove approx-
imately six blocks to the grounds of Kinston High School where
he produced a knife and despite her protest and resistance forci-
bly had sexual intercourse with her. Tanya had opportunity to
observe her assailant as she entered the automobile, as they
drove to the school grounds, and during the actual rape. After the

act was completed, defendant drove from the school grounds and let her out. As the automobile departed, she observed that the license number was KR__-330. She was unsure of the third letter. Tanya proceeded to her grandmother's home and told her relatives that she had been threatened by a young black male driving a green Buick bearing license number KR__-330. Later that night, she told the family of the rape, and she was carried to the hospital and examined by Dr. Mintz. She gave police officers a description of defendant as being about 20 years old, black, about six feet tall, dark complexion, close cut haircut, a little hair under his nose and a little bit of hair under his chin. She described the automobile occupied by her assailant as a green Electra 225. She noticed a little white toy animal hanging on the rear view mirror. She described the clothing that her assailant was wearing.

On 14 September 1977 about 11:00 p.m., Lt. L. B. Green of the Kinston Police Department who had been furnished with an account of the crimes allegedly committed against Tanya including a description of the assailant and his automobile observed a 1972 green Electra Buick bearing license number KRE-330 being operated without headlights. He stopped the car and observed that the operator was a young black about five feet, eight or nine inches tall, of medium build with a small amount of hair on his lip and chin. The man he observed fit the description of Tanya's assailant. He noticed some sort of toy animal hanging from the rear view mirror. At that time, Lt. Green told defendant, who was the operator of the automobile, that he was being cited for a slick tire and further that he and his automobile matched the description given by the victim of a sexual assault case which was under investigation. Pursuant to his request, defendant agreed to follow him to the police station. Upon arrival at the station, the officer gave defendant the *Miranda* warnings, and defendant agreed to answer questions but said he wanted to see his girlfriend; however, he was unable to furnish the officers with his girlfriend's address or telephone number. Defendant was given a citation for improper equipment, and he was fingerprinted and photographed prior to being formally arrested for rape. Other evidence from the victim and police officers was to the effect that on 12 September 1977, Tanya was shown several pictures of black males who were about the same age as defendant. The pictures were of the same type and were exhibited to her by police of-

ficers without any suggestion or instruction except a request that she state whether any of the photographs were of the man who raped her. She at that time stated that photograph number six *looked* like the man, but she would not be positive. Photograph number six was, in fact, a picture of defendant. Again on 15 September 1977, Tanya was shown eight photographs of young black males without any suggestion or comment of any kind. She was again asked if she could recognize her assailant among the photographs shown to her. She picked out a photograph of defendant within a few seconds.

Defendant offered no evidence on this voir dire hearing.

At the conclusion of this voir dire hearing, Judge Brannon found facts consistent with the above-stated evidence and, *inter alia*, concluded:

5. There were no illegal identification procedures or photographic lineups involving the defendant or his car.

* * *

8. The photographic identification procedure here denoted as a confrontation was not so unnecessarily suggestive or conducive so as to lead to any chance of mistaken identification to the extent that the defendant would be denied due process of law.

* * *

6. That the in-court identification of the defendant by the victim is of independent origin, based solely on what the victim saw at the time and times of the crime of rape, and does not and did not result from any out-of-court confrontation, or from any photograph or from any pretrial identification procedures suggestive or conducive at all to mistaken identification.

Judge Brannon then ruled that the in-court identification testimony of Tanya Suggs was admissible at trial.

A voir dire hearing was conducted by Judge Barbee at trial concerning the admissibility of the identification testimony of the witness Ethel Jones. On voir dire, the testimony of a police officer and Ethel Jones tended to show that on 15 September 1977

officers exhibited a set of eight photographs of young black males
to Ethel Jones. The photographs were all of the same type, and
the officers made no suggestions of any kind to her when she was
asked if she could identify any of the photographs as being a pic-
ture of the man she saw talking to Tanya on 11 September 1977.
She initially stated that photograph number eight looked very
much like defendant, but she ultimately picked out the picture of
another man as being the person she observed on 11 September
1977. Photograph number eight was, in fact, a picture of defend-
ant. She testified that at about 11:15 a.m. she saw defendant sit-
ting in a Buick automobile about twenty feet from her back door.
He was blowing the horn and was looking at her eight year old
"grandbaby." For this reason, she was concentrating on him and
"got a mental picture" of him. She was able to describe defend-
ant's features and the type shirt he wore on that day. She had
previously seen him engaged in similar activities with children.
On 11 September 1977 after she had observed defendant for some
time, she saw Tanya go to defendant's car. Lt. Green testified in
corroboration of the witness Jones. Defendant offered no
evidence.

At the conclusion of the voir dire conducted before him,
Judge Barbee, after finding facts consistent with the above-stated
evidence, in part, concluded:

> 1. Mrs. Jones had ample opportunity to observe the
> defendant while the defendant was allegedly sitting in the
> green Buick near her home around 11:15 a.m., on September
> 11, 1977;

* * *

> 3. There were no illegal identification procedures;

> 4. The in-court identification of the defendant by Mrs.
> Jones is of independent origin based solely on what Mrs.
> Jones saw at the time around 11:15 a.m., on September 11,
> 1977, and does not result from any out-of-court confrontation
> or from any photograph or from any pretrial identification
> procedures suggestive or conducive to mistaken identifica-
> tion;

He thereupon ordered that defendant's motion to suppress the in-court identification of defendant by Mrs. Ethel Jones be denied.

In support of his argument that an illegally taken photograph rendered the in-court testimony inadmissible, defendant relies upon *Davis v. Mississippi*, 394 U.S. 721, 22 L.Ed. 2d 676, 89 S.Ct. 1394 (1969), and *State v. Accor* and *State v. Moore, supra.*

In *Davis*, an elderly woman was raped by an assailant whom she could only describe as a Negro youth. Fingerprints were found on the windowsill at her home, and defendant along with twenty-four or more other Negro youths were fingerprinted without any reasonable probable cause to believe that they were guilty of the rape. It was ascertained that the prints found on the windowsill were those of defendant. The United States Supreme Court ruled that the introduction of this fingerprint evidence was error.

In *State v. Accor* and *State v. Moore, supra*, defendants were picked up and brought to the police station without a warrant and without probable cause. There was no evidence that the defendants voluntarily accompanied the officers to the police station. Neither was there evidence that they voluntarily and understandingly consented to the taking of their photographs. This Court, speaking through Chief Justice Bobbitt, held that standing alone, this pretrial photographic evidence and evidence of defendants' in-court identification were rendered inadmissible. However, the Court noted that it did not necessarily follow that the in-court identification testimony would be incompetent should the State offer clear and convincing evidence that the in-court testimony originated independently of the pretrial photographic procedures.

Instant case differs from *Davis* and *Accor and Moore*. Here, although defendant was photographed prior to his arrest for rape, there was ample probable cause to arrest him on that charge. There was evidence that defendant voluntarily accompanied the officers to the police station where he was advised of his *Miranda* rights and cited for a minor motor vehicle violation. He was told on two occasions prior to being photographed that the police were investigating a sexual assault and that he and his automobile fit the description of the suspect furnished by the victim. There was also evidence from which it could be inferred that defendant con-

State v. Wilson

sented to have his photograph taken. In our opinion, these substantial differences remove the case *sub judice* from the ambit of the holdings in *Davis* and *Accor and Moore*.

Even if we were to concede that the taking of defendant's photograph prior to his arrest was impermissible and illegal so as to taint the in-court testimony, and we do not so concede, the in-court identification testimony would have still been properly admitted. This is so because the findings of fact by Judges Barbee and Brannon were supported by competent, clear and convincing voir dire evidence, and the findings supported the conclusion of each of the judges that the in-court identification testimony of the witness Ethel Jones and the witness Tanya Joyce Suggs was of independent origin based on what each witness observed on 11 September 1977. The findings of each judge likewise supported their respective conclusions that there were no illegal identification procedures which were so unnecessarily suggestive or conducive to irreparable misidentification as would deprive defendant of his constitutional right to due process.

We hold that Judge Barbee and Judge Brannon correctly ruled that the in-court identification testimony of the witnesses Suggs and Jones was admissible into evidence.

[3] Defendant next contends that the trial court erred in admitting certain physical evidence, photographs, and testimony resulting from the search of his apartment and automobile. It is defendant's position that all such evidence was inadmissible because it was obtained in violation of his constitutional rights as a result of: his being illegally photographed; the denial of his request for the presence of his girlfriend; the failure to inform him whether he could leave the police station if he did not submit to photographs; and the inclusion in the subsequently issued search warrant of the positive identification of defendant from the illegally obtained photograph.

Defendant does not attack the validity of the search warrants. Therefore, we must only determine whether the alleged violations, of which he complains, are of such a nature that the evidence seized as a result of the searches was tainted and should have been suppressed.

When defendant arrived at the police station with Officer Green, he was advised of his rights. After being informed that he was not under arrest, he said he felt that he didn't need a lawyer but would like his girlfriend to be present. He requested a telephone book which he thumbed through briefly then stated that his girlfriend did not have a telephone. Officer Green told defendant that he would send a patrol car to pick her up if defendant would tell him where she lived. However, defendant did not know his girlfriend's address. Defendant then requested Officer Green to drive him to his girlfriend's house, which request was refused. Later when defendant was asked if he would submit to fingerprinting and photographing, he stated that he would but "he wanted his girlfriend down there."

We are advertent to defendant's right to communicate with counsel, friends and relatives at every critical stage of the proceedings against him. *State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971). However, the photographing of defendant was outside the protection of the Fifth Amendment right against self-incrimination and did not constitute a "critical stage" which entitled him to the assistance of counsel. *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581 (1968), *cert. denied*, 396 U.S. 934. Certainly if defendant was not entitled to the assistance of trained counsel, we cannot perceive how the absence of his girlfriend was prejudicial to him. Moreover, the absence of defendant's girlfriend cannot be attributed to any fault of the police officers, who made every reasonable effort to accommodate defendant's wishes. She was not present simply because defendant did not know how to contact her.

We have heretofore concluded that neither defendant's detention nor the taking of photographs was improper. That being so, we perceive no irregularities with respect to the searches which would render the evidence resulting therefrom inadmissible. This assignment of error is without merit.

Defendant assigns as error the trial court's denial of his motions for a directed verdict.

A motion for a directed verdict has the same legal effect as a motion for judgment as of nonsuit. Both motions challenge the sufficiency of the evidence to carry the case to the jury. *State v. Glover*, 270 N.C. 319, 154 S.E. 2d 305 (1967); *State v. Wiley*, 242

N.C. 114, 86 S.E. 2d 913 (1955). The trial court in its consideration of such motions must view the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

[4]   In instant case, defendant's argument that the motion should have been allowed on the charge of rape because there was no proof of penetration is without merit. Without recounting the sordid details, we think it is sufficient to state that there was plenary testimony by the victim as well as medical testimony from which the jury could reasonably infer that the victim was penetrated.

[5]   Defendant also argues that his motion for a directed verdict on the charge of kidnapping should have been allowed because to permit him to be convicted on the charges of kidnapping and rape would be violative of due process and his constitutional protection against double jeopardy.

G.S. 14-39(a) provides:

> (a) Any person who shall unlawfully confine, restrain or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint, or removal is for the purpose of:
>
> (1) Holding such other person for ransom or as a hostage or using such other person as a shield; or
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

In support of this argument, defendant relies heavily upon language contained in *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). We quote that language:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy . . . .

However, under the factual circumstances of this case, defendant's position is undone by the language contained in the next ensuing paragraph of *Fulcher*, to wit:

> On the other hand, it is well established that two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of the other (*e.g.*, a breaking and entering, with intent to commit larceny, which is followed by the actual commission of such larceny). In such a case, the perpetrator may be convicted of and punished for both crimes. Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony. Such independent and separate restraint need not be, itself, substantial in time, under G.S. 14-39 as now written. . . .

In the case *sub judice*, the victim was by trick enticed into defendant's automobile and transported about six blocks away where by force and by threat of the use of a knife, she was raped. During a period of about forty-five minutes, the victim was under the complete dominion and control of defendant. The restraint accompanying the rape was not an inherent, inevitable feature of the kidnapping. Under these circumstances, the kidnapping was a separate, complete act independent of the later committed crime of rape. Thus, the constitutional problem of double jeopardy does not arise, and defendant fails to show denial of due process.

We hold that the trial judge correctly denied defendant's motions for a directed verdict.

[6] Finally, defendant contends that G.S. 14-21(1)(a) is unconstitutional because it is a gender based criminal law violative of the equal protection clause of the Fourteenth Amendment.

Defendant relies on *Meloon v. Helgemoe*, 564 F. 2d 602 (1st Cir. 1977), *cert. denied*, ---- U.S. ----, 98 S.Ct. 2858, which held unconstitutional the New Hampshire statute under which the defendant was convicted of statutory rape, for engaging in consensual sexual intercourse with a female under the age of 15 years. Under the New Hampshire statute, any male who had sexual intercourse with a female under age 15 would be guilty of a felony. There was no prohibition or penalty for a female having sexual intercourse with a male under age 15.

We feel that defendant's reliance on *Meloon* is misplaced. In that case, the New Hampshire court was careful to point out that the offense was not based on forcible rape but rather on an act of consensual sexual intercourse. The decision was narrowly limited to the specific facts which involved a "love tryst" between a 16 year old boy and a 14 year old girl. The court went so far as to distinguish cases from other jurisdictions, relied upon by the State in support of its contention that the statute was constitutional, on the ground that the cited cases involved forcible rape. It is apparent that *Meloon* does not dictate the result in instant case.

Nevertheless, decision dictates that we examine the provisions of our own rape statute, G.S. 14-21(1)(a). While the United States Supreme Court has not provided a definitive statement of the standard of scrutiny to be applied to a gender based classification, the decisions of that Court indicate that such a classification requires more heightened scrutiny than would be applied to completely non-suspect legislation, but less stringent scrutiny than is typically applied to racial classifications. *Reed v. Reed*, 404 U.S. 71, 30 L.Ed. 2d 225, 92 S.Ct. 251 (1971); *Frontiero v. Richardson*, 411 U.S. 677, 36 L.Ed. 2d 583, 93 S.Ct. 1764 (1973).

Although forcible rape was involved in the instant case, defendant was convicted of statutory rape under G.S. 14-21(1)(a), which provides:

§ 14-21. *Rape; punishment in the first and second degree.*
—Every person who ravishes and carnally knows any female
of the age of 12 years or more by force and against her will,
or who unlawfully and carnally knows and abuses any female
child under the age of 12 years, shall be guilty of rape, and
upon conviction, shall be punished as follows:

    (1) First-Degree Rape—

        a. If the person guilty of rape is more than 16 years
        of age, and the rape victim is a virtuous female
        child under the age of 12 years, the punishment
        shall be death . . . .

The primary distinction between G.S. 14-21(1)(a) and the New
Hampshire statute, which was held unconstitutional in *Meloon*, is
the age differential in our statute. Under the New Hampshire
statute, sexual intercourse with a female under age 15 constituted
statutory rape. In North Carolina, statutory rape is committed
only if the male is over 16 years of age and the victim is a "vir-
tuous female child under the age of 12 years . . . ." Unques-
tionably, the protection of young females from sexual intercourse
and the concomitant potential for physical injury is a legitimate
legislative concern. In upholding a statute containing a similar
age differential, the Iowa Supreme Court, in *State v. Drake*, 219
N.W. 2d 492, 496 (Iowa 1974), stated:

    . . . Once we accept the principle that the purpose of the
    statute—to protect certain young females from sexual inter-
    course—is a proper subject of state interest, it inevitably
    follows that the curbs adopted to accomplish that purpose
    can only be imposed against males because they are the only
    persons who may inflict the injury which the law seeks to
    avoid.

We also find enlightening the following language from *Finley v.*
*State*, 527 S.W. 2d 553, 556 (Tex. Crim. App. 1975):

    . . . Furthermore, a unique characteristics test can be applied
    to justify the statutory classification. Hymen and uterine in-
    jury to female rape victims, the possibility of pregnancy, and
    the physiological difficulty of a woman forcing a man to have
    sexual intercourse with her all suggest a justification for the
    sexual distinction embodied in [the rape statute].

State v. Wilson

While the possibility of pregnancy may be slight for a girl under 12 years of age, the possibility of physical injury is greater than the possibility of physical injury to older and more physically mature females. This is particularly true when the male is over 16 years of age. The age differential in G.S. 14-21(1)(a) indicates that the Legislature recognized this distinction.

We agree with the conclusion reached in *State v. Kelly*, 111 Ariz. 181, 184, 526 P. 2d 720, 723 (1974), *cert. denied*, 420 U.S. 935:

In the instant case, we believe that the need for treating males and females differently in enacting the rape statute is clearly reasonable. The statute satisfies the real, if not compelling, need to protect potential female victims from rape by males.

However, for obvious physiological as well as sociological reasons we perceive no need by males for protection against females from rape which would be sufficient to demand legislative attention.

For reasons stated, we hold that G.S. 14-21(1)(a) is logically and rationally related to a legitimate governmental objective and, therefore, is not violative of the equal protection clause of the Fourteenth Amendment.

Our examination of this record discloses that defendant has been accorded a fair trial free from prejudicial error.

No error.

Justices BRITT and BROCK took no part in the consideration or decision of this case.