STATE OF NORTH CAROLINA v. HAROLD GODWIN

No. 8816SC1214

(Filed 19 September 1989)

### 1. Criminal Law § 101.4— alternate juror in jury room during deliberations—defendant prejudiced

Prejudicial error occurred when an alternate juror retired to the jury room with the other twelve members and when, following the return of the verdict, the judge met privately with the jury members in the jury room, since nine minutes elapsed from the jury's retirement to the discovery of the al-

STATE v. GODWIN

[95 N.C. App. 565 (1989)]

ternate; during that time the jury elected a foreperson; the trial judge did not ask the alternate whether any discussion of the case had occurred; and when the judge did inquire of the jury whether such discussion had begun during the alternate's presence he did so after meeting with them in the jury room.

**2. Constitutional Law § 45 — defendant permitted to represent self — no inquiry made — defendant prejudiced**

The trial court erred in permitting defendant to represent himself without making the required inquiry at a point where his lawyer would most probably have sought a mistrial.

APPEAL by defendant from *Preston, Cornelius, Judge.* Judgment entered 29 January 1988 in Superior Court, ROBESON County. Heard in the Court of Appeals 22 August 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Francis W. Crawley, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

BECTON, Judge.

A jury convicted the defendant, Harold Godwin, of first degree rape, first degree sexual offense, and second degree kidnapping. The judge sentenced defendant to consecutive life terms for the rape and sex offense convictions, and to a concurrent nine-year term for the kidnapping count. Defendant appeals, assigning as error the presence of an alternate juror in the jury room during the deliberation stage of the trial, the judge's entry into the jury room without defendant being present, the judge's decision to allow defendant to represent himself, and the judge's instruction to the jury on the elements of first degree sexual offense. We agree with defendant that prejudicial error occurred at his trial, and, therefore, we vacate the judgment and award a new trial.

The State's evidence tended to show that the prosecutrix was returning to her home at approximately 2:00 A.M. on 14 June 1986. A pickup truck, with only its parking lights turned on, followed her car. At a spot about a mile and a half from the prosecutrix's home, the driver of the truck pulled in front of her car and stopped. Defendant, Harold Godwin, exited the truck, came back

to the car and forced his way inside. As he held onto the prosecutrix, he ordered her to pull her car off the road. Defendant then forced the prosecutrix to get into the pickup truck. At one point, he told the prosecutrix that he was going "to screw" her.

Defendant drove down a dirt road and stopped the truck. Taking a handgun from behind the seat, defendant told the prosecutrix he would hurt her if she did not obey him. Defendant undressed and then removed the prosecutrix's clothing. Defendant forced the prosecutrix to perform fellatio on him while he performed cunnilingus upon her. Defendant then drove the truck farther down the road and stopped in a cornfield. There, he forced the prosecutrix to engage in vaginal intercourse with him. Following this, defendant returned the prosecutrix to her car and released her. The prosecutrix reported the assault and, on 20 June 1986, the police arrested the defendant.

Defendant presented testimony from two witnesses that they had seen the prosecutrix on several occasions at defendant's apartment. This evidence was in contrast to the prosecutrix's testimony that she did not know defendant and had never seen him prior to the morning of 14 June.

I

Defendant brings forward four assignments of error on appeal. Three of these, we believe, are a basis upon which to award him a new trial. As the fourth issue, involving jury instructions, is unlikely to arise at a second trial, we do not address it. The three remaining issues are closely related by the circumstances at trial; we begin by laying out their factual background.

A

The record reflects that after the judge instructed the jury, they retired to deliberate at 12:15 P.M. The court reporter subsequently told the judge that a thirteenth juror had gone into the jury room, and, at 12:24 P.M., the judge returned the jury to the courtroom. By this point, the jury members had elected one of their number as foreperson. The judge told the jury to stop its deliberations, and he recessed the trial for lunch.

Following the recess, the judge asked the parties if they had any motions they wished to make. The State suggested that the

STATE v. GODWIN

[95 N.C. App. 565 (1989)]

alternate juror be removed from the jury room. The following then occurred between the judge, defendant's lawyer, and defendant:

> [Defense Lawyer] Barrington: May it please the Court, during the luncheon recess after the jury was brought back in, I, about 20 minutes 'til two this afternoon, went back in one of the conference rooms and advised him of this. Basically my client's position is—and I think your Honor should question him as to his position—his position is he no longer wants me speaking for him.

> The Court: Mr. Godwin, you want to speak for yourself, sir?

> Defendant: Yes, sir. I just want to get it over with today. He said something about getting a mistrial declared. I don't want no mistrial. It's been a burden to my wife and my family and all, and I just want to get it over with today, your Honor. One way or the other I want it over with.

> * * * * *

> The Court: You do not wish you or your attorney to make a motion for a mistrial based upon the fact that the 13th juror went into the jury room?

> Defendant: No sir, I don't . . . . I'm not putting nothing on the State to retry me over again. I just want to get it over with today.

> The Court: Mr. Godwin, you realize the Court will have to remove the 13th juror.

> Defendant: Yes, sir.

The judge then brought the alternate juror into the courtroom and asked her: "[d]id you deliberate or participate in [the jury] deliberations up to this point"; "[h]ad you said anything in there"; "[h]ad you expressed an opinion to the other jurors about how you felt about this matter"; "[h]ave they asked your opinion"; "[h]ave you said anything at all in there"; "[h]ave you talked to any of them in there?" To each of these questions, the alternate gave a negative answer. Pursuant to a suggestion from defendant's lawyer, the judge asked the alternate if the jury had "taken a vote on these matters in there," to which the alternate replied that no vote had been taken. The judge then heard from the State and

from defendant, who again said he did not want a mistrial and that he did not want his lawyer to speak for him on that subject.

After putting findings of fact into the record, the judge returned the jury to the courtroom and instructed them not to consider anything resulting from the alternate's presence in the jury room. The jury retired to deliberate at 2:36 P.M. and returned its verdict seven minutes later.

Following the verdict, the judge sent the jury back to the jury room. He told them, "I will be back to talk with you in just a moment." The judge then ordered a short recess and went into the jury room for approximately ten minutes. When court reconvened, the judge returned the jury to the courtroom for the purpose of making additional findings of fact. In response to a question by the judge, the foreperson said that, at the time the alternate's presence was discovered, the jury had not begun its deliberations. The judge told the other jury members that if "deliberations had begun during the time [the alternate was in the jury room] to the extent that you feel that she influenced you in any way, please raise your hand . . . ." None of the members responded. The judge then dismissed the jury and held the sentencing hearing.

B

[1] Defendant alleges that prejudicial error occurred when the alternate juror retired to the jury room with the other twelve members and when, following the return of the verdict, the judge met privately with the jury members in the jury room. Although defendant has made these allegations the basis of two assignments of error, we shall discuss these issues together.

An alternate juror's presence in the jury room after a criminal case has been submitted to the regular panel of twelve "is always error." *State v. Bindyke*, 288 N.C. 608, 623, 220 S.E.2d 521, 531 (1975). The error is prejudicial when the alternate's presence occurs during the actual *deliberations* of the jury. *Id.* at 627, 220 S.E.2d at 533; N.C. Const. art. I, Sec. 24; N.C. Gen. Stat. Sec. 9-18 (1986). The rule in this State is that "at anytime an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial." *Bindyke*, 288 N.C. at 627-28, 220 S.E.2d at 533 (emphasis in original).

Although it is error for 13 people to retire to the jury room, our courts endeavor to draw "common sense" distinctions as to the degree of error that may result from the alternate's presence. In *Bindyke*, our Supreme Court noted an Illinois case in which the alternate went into the jury room to retrieve her coat at a point before any deliberations had occurred. Our Court agreed with the Supreme Court of Illinois that such occurrences do not warrant reversal of a defendant's conviction. *See id.* at 628, 288 S.E.2d at 533-34. The *Bindyke* Court thus formulated the following rule to be applied in cases involving an alternate's presence:

> The presence of an alternate juror in the jury room at any time during the jury's deliberations will void the trial. The alternate has participated by his presence; and the court will conduct no inquiry into the nature or extent of his participation. However, if through inadvertence, the alternate retires with the jury at the time the case is submitted to it, and his presence in the jury room is discovered so promptly that the trial judge believes it probable no deliberations have begun, he may recall the jury and the alternate and make the limited inquiry whether there has been any discussion of the case or comment with reference to what the verdict should be. If the answer is YES, the judge must declare a mistrial; if the answer is NO, the jury will retire to begin its deliberations.

*Id.* at 629-30, 220 S.E.2d at 534-35.

Defendant contends that the judge erred by making an inquiry of the alternate when it was apparent that jury deliberations had begun, by making the inquiry of the alternate outside the presence of the jury panel, by making an incorrect inquiry of the alternate, and by meeting alone with the jury. The State argues that the judge correctly determined that no deliberations had occurred by the point of the discovery of the presence of the alternate, and that no prejudicial error occurred as a result. We find defendant's argument the more convincing.

In *Bindyke*, our Supreme Court said that when a jury has been in the jury room for a substantial length of time, the assumption must be made that deliberations are taking place. *Id.* at 628, 220 S.E.2d at 534. When the jury's retirement has been for a shorter period, however, determining whether it is engaged in deliberations is more problematic. In such circumstances, the judge, relying on his or her trial experience and knowledge of the par-

## STATE v. GODWIN

[95 N.C. App. 565 (1989)]

ticular case, must conclude whether it is probable that deliberations have begun. *Id.* at 628-29, 220 S.E.2d at 534. If the judge believes it likely that no deliberation has taken place, "he may properly recall the jury and the alternate and, in open court, inquire of them whether there had been *any* discussion of the case." *Id.* at 629, 220 S.E.2d at 534 (emphasis in original).

We would overrule defendant's assignment of error were the only issue before us whether the judge properly concluded that no deliberations had occurred during the nine-minute interval between the jury's retirement to the jury room and their return to the courtroom following the discovery of the alternate's presence. In our view, however, too many deviations from the procedure established in *Bindyke* took place for us to hold the cumulative error harmless. As defendant correctly points out, the judge's initial inquiry was addressed only to the alternate, and at no point did he ask her *whether any discussion of the case* had occurred.

Most critically, when the judge did inquire of the jury whether such discussion had begun during the alternate's presence, he did so after meeting with them in the jury room. *Bindyke* requires that the judge inquire of the jury in open court; here, it is likely that the first inquiry took place in private. We in no way imply that the judge said anything improper during this meeting. We cannot know, however, what the jury members inferred from this discussion and how this discussion influenced the responses they gave in open court. In open court, for example, the jury foreperson said that no discussions had occurred with the alternate present and that the members had been using the restroom when they realized the alternate had come into the jury room with them. When the judge initially returned the members to the courtroom, however, they had, by that point, elected one of their number as foreperson.

The State, in our view, asks for too elastic an application of the *Bindyke* requirements to the procedure the judge used in this case. We do not lightly impose the rigors of a second trial upon this prosecutrix; at the same time, defendant has been sentenced to two consecutive terms of life imprisonment. As a result of the aberrations that occurred during the deliberation stage of this trial, the law requires that this case be remanded.

C

[2]  Intertwined with the errors that resulted from the alternate's presence in the jury room, we agree with defendant that the judge erred by permitting defendant to represent himself at a time when defendant's lawyer might have petitioned the court for a mistrial. On this ground as well, therefore, we award defendant a new trial.

A defendant may elect "to proceed in a trial of his case without the assistance of counsel *only after* the trial judge makes a thorough inquiry" that satisfies the judge that the defendant has been clearly advised of his right to the assistance of counsel, understands and appreciates the consequences of his decisions to represent himself, and comprehends the nature of the charges and proceedings and the range of permissible punishments. N.C. Gen. Stat. Sec. 15A-1242 (1988) (emphasis added). The inquiry is a mandatory one, and failure to conduct it is prejudicial error. *State v. Bullock*, 316 N.C. 180, 185-86, 340 S.E.2d 106, 108-09 (1986). In this case, the judge, without making the mandated inquiry, allowed defendant to speak for himself at a point where his lawyer most probably would have sought a mistrial. We hold that this was prejudicial error.

II

For the foregoing reasons, we are compelled to vacate the judgment of the trial court, and the case is remanded for a new trial.

New trial.

Judges ARNOLD and COZORT concur.