STATE OF NORTH CAROLINA v. MURRAY ALAN COATS

No. 8910SC1077

(Filed 30 October 1990)

1. **Indictment and Warrant § 8.4 (NCI3d)— kidnapping and sexual offense—kidnapping conviction arrested—State not required to elect between charges**

   In a prosecution for first degree kidnapping and first degree sexual offense where the trial court's arrest of judgment on the conviction for first degree kidnapping prevented double punishment for the same conduct, the Court of Appeals declined to adopt defendant's contention that an election between charges to preclude double punishment should be mandatory when defendant so moves at the charge conference.

   **Am Jur 2d, Abduction and Kidnapping § 34; Criminal Law §§ 20, 21, 520-524.**

2. **Kidnapping § 2 (NCI3d)— first degree kidnapping—judgment arrested—sentencing for second degree kidnapping**

   It was proper to sentence defendant for second degree kidnapping in a prosecution for first degree kidnapping and first degree sexual offense where judgment was arrested on the conviction for first degree kidnapping to prevent double punishment. The trial court correctly charged the jury on the elements of first and second degree kidnapping, the jury asked during deliberations to be instructed on the difference between first and second degree kidnapping, the trial court once again instructed the jury on the elements of those offenses, and, when the jury found that the State had proven all of the elements of first degree kidnapping, the jury necessarily had to find that the State had proven all the elements of second degree kidnapping.

   **Am Jur 2d, Abduction and Kidnapping §§ 4, 34; Trial §§ 712 et seq.**

3. **Criminal Law § 503 (NCI4th)— court's remarks to jury—jury not coerced**

   The trial court's unrecorded remarks did not amount to a coercion of the jury to reach a verdict where the inference

that the court's remarks rushed the jury to a verdict is not warranted.

**Am Jur 2d, Trial § 1055.**

**4. Criminal Law § 959 (NCI4th)— State's failure to disclose evidence—motion for appropriate relief denied**

Defendant's motion for appropriate relief in a prosecution for first degree kidnapping and first degree sexual offense was properly denied where the motion was based on the State's failure to disclose a witness's statement to an officer but the statement, assuming admissibility, was not internally consistent, was not material, and did not meet the requirements of N.C.G.S. § 15A-1415(b)(6).

**Am Jur 2d, Depositions and Discovery §§ 428, 437, 455-461.**

APPEAL by defendant from judgment entered 14 April 1989 by *Judge Orlando Hudson* in WAKE County Superior Court. Heard in the Court of Appeals 29 May 1990.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Jane R. Garvey, for the State.*

*Richard W. Rutherford for defendant appellant.*

COZORT, Judge.

On 14 April 1989, the defendant was convicted of first-degree kidnapping and two counts of first-degree sexual offense. He received the mandatory sentence of life imprisonment for each count of first-degree sexual offense. Judgment was arrested on the conviction of first-degree kidnapping, and the defendant was sentenced to a term of thirty years' imprisonment for second-degree kidnapping. We find no error.

At trial the State offered evidence tending to show the following: At approximately 7:15 on the morning of 5 November 1988, Kimberly Lynn Hilton arrived for work at the Star Flite Gas Station on North Boulevard in Raleigh. Early that morning the defendant Murray Alan Coats, who patronized this gas station and convenience store, came inside to buy a soft drink or a pack of cigarettes. At approximately 9:00 the same morning, the defendant returned and found Ms. Hilton alone in the store.

According to Ms. Hilton's testimony, when the defendant returned, he walked behind the counter, put a gun to her face, grabbed her by the hair, and pulled her out of the store. After placing her in the passenger side of a pickup truck, he locked the door and held a gun against her left leg. The defendant drove to a wooded area, stopped near a barn, forced Ms. Hilton inside, and ordered her to undress. The defendant then ordered Ms. Hilton to perform fellatio, which continued for an hour or more. While pressing a gun against her temple, the defendant said: "[Y]ou can do better than that."

Ms. Hilton testified further that the defendant ordered her to change positions several times and to get on a platform on her hands and knees. Then, she testified,

> he put his fingers inside of my vagina.

> Q. Okay. What happened after that?

> A. And I said, ouch, because it hurt. And he took his fingers out of me and then he told me to stand up.

At this point the attack ceased, and the defendant began a rambling monologue about his use of cocaine the previous night, his knowledge of Ms. Hilton's family and their residence, and his difficulties with his girlfriend. Finally, after Ms. Hilton promised to tell no one about the attack, the defendant left the barn. After five or ten minutes, Ms. Hilton looked out of the barn and saw "that the truck was still there and that . . . another car . . . had pulled in . . . facing in the opposite direction." Ms. Hilton left the barn and found her way to a house, whose owner called the police.

Ronald Gay testified that he bought gas at the Star Flite station where Ms. Hilton worked. He stopped there on the morning of 5 November 1988, but found no one except another patron who was looking for the clerk. Gay stated: "I didn't see her [Ms. Hilton] anywhere . . . . I went behind the counter; cash register door was closed. . . . So, I called the Raleigh Police Department and told them who I was and what I had found there."

Officer M. F. Frazier, who responded to Mr. Gay's call, testified that he investigated the scene and found, among other items, Ms. Hilton's pocketbook and car keys. With Kim Marshall, manager of the Star Flite station, Officer Frazier found "money in the cash register; so, it didn't appear to be a robbery."

William Rhodes, Ms. Hilton's boyfriend, testified that he telephoned her between 7:30 and 7:45 on the morning of 5 November 1988. He testified further that he usually brought Ms. Hilton lunch "[o]n the weekends when she worked" and that he planned to bring her lunch "[a]round 11:00" that day. When he arrived at the Star Flite station, he saw a "whole swarm of CCBI. The place was surrounded by police."

Billy Ray Prince testified that, while driving home on 5 November 1988, he saw the defendant standing beside a truck. Prince stopped, asked whether he could help and volunteered "to go get some jumper cables." When the jumper cables failed to start the defendant's truck, Prince used his car to push the defendant's truck until it jump started.

Mr. Coats testified in his own defense and gave the following account: He stopped at the Star Flite station "about every Saturday" on his way to or from work and struck up "casual conversation" with Ms. Hilton. They "tended to flirt a little bit with each other." On the night of 4 November 1988, "seven people" came to Mr. Coats' residence for a party. Mr. Coats drank some alcohol and used some drugs until approximately 1:00 the next morning. On his way to work, he stopped at the Star Flite station and struck up a conversation with Ms. Hilton. They agreed that they did not want to work that morning. Mr. Coats left the station, had difficulties with his car, exchanged it for his girlfriend's pickup truck, and decided to return to Star Flite to see whether Ms. Hilton wanted to take the day off. She willingly left with him, telling him not to worry about leaving the store unlocked because she had a plan. Mr. Coats' gun was on the seat of the truck, but its clip was inside the glove compartment, and at no time did he threaten her with the gun. She agreed to enter a barn and voluntarily performed fellatio on him. After their sexual encounter ended, they talked for about an hour. Ms. Hilton "said that she was going to tell her mother that she had been abducted from the store" so that she would no longer have to work there, but she assured Mr. Coats that she would not implicate him in the story she would fabricate. Then, according to Mr. Coats, Ms. Hilton left the barn, and he returned to the pickup truck and with the help of a passerby got it started.

The defendant also presented several character witnesses who testified in his behalf.

[1] On appeal the defendant contends that the trial court erred in failing to require the State to submit only the first-degree kidnapping charge or only the first-degree sex offense charges to the jury. Although the trial court's arrest of judgment on the conviction of first-degree kidnapping prevented double punishment for the same conduct, the defendant argues that, where, as here, the defendant moves at the charge conference to require an election between charges to preclude the possibility of double punishment, such an election should be mandatory for the State. The defendant cites no authority to support that proposition, and we decline to adopt it.

Among its other aspects, the Fifth Amendment guarantee against double jeopardy "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 665 (1969). In North Carolina the crime of kidnapping has two degrees. "If the person kidnapped was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree." N.C. Gen. Stat. § 14-39(b) (1989). A defendant may not be punished for both first-degree kidnapping and sexual assault, where the sexual assault is used to elevate kidnapping to the first degree. *State v. Freeland*, 316 N.C. 13, 23, 340 S.E.2d 35, 40-41 (1986), *resentencing affirmed on appeal*, 321 N.C. 115, 361 S.E.2d 560 (1987); *accord State v. Mason*, 317 N.C. 283, 292, 345 S.E.2d 195, 200 (1986); and *State v. Walker*, 84 N.C. App. 540, 544, 353 S.E.2d 245, 247-48 (1987). In both *Freeland* and *Mason* the defendant was convicted and sentenced for a sexual assault and first-degree kidnapping predicated on the sexual assault, and in both cases our Supreme Court required the trial court to arrest judgment either on the conviction of sexual assault or on the conviction of first-degree kidnapping. In both cases the Court held that the defendant could be resentenced for second-degree kidnapping, if judgment on first-degree kidnapping was arrested. *Freeland*, 316 N.C. at 324, 340 S.E.2d at 41; *Mason*, 317 N.C. at 292-93, 345 S.E.2d at 200.

[2] In a related argument the defendant asserts that, following the arrest of judgment on his conviction for first-degree kidnapping, he should not have been sentenced for second-degree kidnapping without a specific adjudication of guilt as to that crime. We note initially that under our case law a defendant may be convicted of kidnapping and of a sexual assault where the restraint or asporta-

tion of the victim "is a separate, complete act, independent of and apart from" the sexual assault. *State v. Silhan,* 297 N.C. 660, 673, 256 S.E.2d 702, 710 (1979); *accord State v. Wilson,* 296 N.C. 298, 310, 250 S.E.2d 621, 628 (1979). Thus, the defendant in the case below could properly be sentenced for second-degree kidnapping if the State proved beyond a reasonable doubt each of the elements of that crime. Regarding kidnapping, the trial court instructed the jury as follows:

The defendant has been accused of first degree kidnapping. Now, I charge that for you to find the defendant guilty of first degree kidnapping the State must prove five things beyond a reasonable doubt:

First, that the defendant unlawfully removed a person from one place to another.

Second, that the person did not consent to this removal.

Third, that the defendant removed that person for the purpose of facilitating his commission of the felony of first degree sexual offense.

Fourth, that this removal was a separate, complete act independent of and apart from the felony of first degree sexual offense.

And, fifth, that the person had been sexually assaulted.

\* \* \* \*

If you do not find the defendant guilty of first degree kidnapping, you must determine whether he is guilty of second degree kidnapping. Second degree kidnapping differs from first degree kidnapping only in that it is unnecessary for the State to prove that the person had been sexually assaulted.

The trial court correctly charged the jury on the elements of first- and second-degree kidnapping. *See* N.C. Gen. Stat. § 14-39; North Carolina Pattern Jury Instructions, Crim. 210.25; North Carolina Crimes, A Guidebook on the Elements of Crime 101-03 (3d ed. 1985). During its deliberations the jury asked to be instructed on the difference between first- and second-degree kidnapping, and the trial court once again instructed them on the elements of those offenses. When it found that the State proved all the elements of first-degree kidnapping, the jury necessarily had to find that

STATE v. COATS

[100 N.C. App. 455 (1990)]

the State proved all the elements of second-degree kidnapping. Thus, it was proper to sentence the defendant for second-degree kidnapping.

[3]   The defendant also contends that the trial court erred in making certain remarks which, the defendant asserts, could be construed as coercing the jury to reach a verdict by 1:00 p.m. of the following day. We disagree.

After closing arguments on 13 April 1989, the following exchange occurred:

THE COURT: All right. Members of the jury, we will ask that you assemble in the jury room at 9:00 o'clock tomorrow morning and I will give you instructions at that time. Please remember the instructions that I have given you throughout the trial about keeping an open mind and not deliberating about this matter and not having any contact with any other parties.

All right. At this time the jury is excused until 9:00 o'clock tomorrow.

(Jury absent.)

MR. ANDERSON: If Your Honor please, we feel like it should be a part of the Court — of the record as to your instructions to the jury while the court reporter was not here in connection with their deliberations and as to the time constraints that you have suggested and things of that nature. We feel like it's —

THE COURT: The time constraints of the Court are the same ones the Court told defense counsel. I said exactly to the jury what I told y'all I would tell them beforehand. If you want to put something in the record about what your recollection is, that's fine. I'll give any party any opportunity to put whatever they want in the record.

MR. ANDERSON: Well, my understanding was you suggested to the — to the jury that by 1:00 o'clock that — that you would not be in the courtroom or that the verdict — you had hoped they would reach a verdict by 1:00 o'clock.

STATE v. COATS

[100 N.C. App. 455 (1990)]

THE COURT: No, sir, I certainly did not. I certainly did not tell the jury anytime about which I would hope they would reach a verdict.

\* \* \* \*

MR. ANDERSON: I'm trying to get my objection in, Judge.

THE COURT: Yes, sir.

MR. ANDERSON: We object to it being done out of the presence of the court reporter.

On 14 April the following was entered in the record:

THE COURT: All right. Miss Court Reporter, if you will record the following, the Court at the request of the defense counsel has been asked to reconstruct a conversation that the Court had at the end of all the jury arguments in the late afternoon, Thursday, April 13th, 1989. This occurred in the presence of all counsel but inadvertently outside the presence of the court reporter.

The Court notes that at an earlier point in the trial of this matter outside the presence of the jury that the Court discussed with all counsel the substance of what the Court would tell the jury but not the exact words. The Court does not recall there being objection at that time.

The Court summary is as follows: Members of the jury, I have known for some time that if we—I'm sorry—that if you were to deliberate on Friday that you would not have a full day to do so. The longest that you would be allowed to deliberate would be 1:00, but this is not the fault of any of the parties in this case.

The Court does not care how long you deliberate but if you desire to deliberate beyond 1:00 o'clock p.m. Friday we will need to discuss whether or not you wish to return Saturday or next Monday. I am not concerned with deciding now whether you will return Saturday or Monday because that is premature. All of us have decided, however, that since you will not have the regular full day to deliberate that the jury should decide what time it desires to start court on Friday.

STATE v. COATS

[100 N.C. App. 455 (1990)]

At this point there was some discussion among the jurors and they decided to begin court at 9:00 o'clock a.m. on Friday morning.

I'll hear from counsel for the State, counsel for the defendant and opportunity to place in the record whatever they desire.

MR. ANDERSON: I think we have an objection in the record, Judge, already.

THE COURT: Yes, sir.

At trial the defendant, through his counsel, was repeatedly afforded opportunities to place in the record any correction or variation in the trial judge's remarks, according to counsel's recollection of those remarks. He did not avail himself of any of those opportunities. On appeal he would have us infer that "the jurors construed the Court's unrecorded remarks the night before as requiring some verdict . . . by 1:00 P.M. [on 14 April 1989], thereby rushing them to a verdict." Based on the record, we do not think that inference is warranted.

The defendant analogizes the trial judge's remarks in the case below to remarks made by the trial judge in *State v. Goodwin,* 95 N.C. App. 565, 569, 383 S.E.2d 234, 236 (1989). The analogy is inapt. In *Goodwin* the trial judge held a private discussion with the jury; neither the defendant nor his counsel was present, and neither the judge's remarks nor a summary of them appeared in the record. In the case below the trial judge's remarks to the jury were made in open court and in the presence of the defendant and his counsel; the substance of those remarks appears of record. In the circumstances disclosed by the case below, the trial judge's unrecorded remarks do not amount to coercion of the jury. *See State v. Holcomb,* 295 N.C. 608, 613-14, 247 S.E.2d 888, 892 (1978).

Having reviewed the record and the briefs, we find defendant's remaining assignments of error to be without merit. They are overruled.

[4] On 17 May 1990, the defendant moved for appropriate relief in the appellate division pursuant to N.C. Gen. Stat. §§ 15A-1418 and 15A-1415(b)(3) and (6). N.C. Gen. Stat. § 1415(b)(3) provides for relief when the defendant's "conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina." The defendant contends that, contrary to the re-

quirements of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and its progeny, the State failed to disclose exculpatory evidence, specifically the transcript of a statement made by Sharon Simmons (now Sharon Brown) to Detective Glover of the Raleigh Police Department. Ms. Brown stated, in part, that Ms. Hilton "is not very responsible." The defendant contends that this evidence was material and "would have enabled the Defendant to prove that the prosecuting witness was irresponsible and voluntarily left the Starflite [*sic*] premises."

Assuming that Ms. Brown's opinion of Ms. Hilton's responsibility is admissible for purposes of impeachment, which is doubtful, Ms. Brown's statement is not internally consistent. While she opined that Ms. Hilton "is not a real responsible person," she also conceded that Ms. Hilton "cared about working," stated that she knew of no problems that Ms. Hilton had had at work, and told Detective Glover that "it isn't like Kim to just leave the store right open and everything." For *Brady* purposes, nondisclosed information "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). By that standard Ms. Brown's opinion is not material.

Section 15A-1415(b)(6) provides for appropriate relief when

[e]vidence is available which was unknown or unavailable to the defendant at the time of the trial, which could not with due diligence have been discovered or made available at that time, and which has a direct and material bearing upon the guilt or innocence of the defendant.

As a basis for the relief sought by the defendant, it is sufficient to note that Ms. Brown's statement does not meet the requirements of that section. *See State v. Sprinkle*, 46 N.C. App. 802, 805, 266 S.E.2d 375, 377, *disc. review denied*, 300 N.C. 561, 270 S.E.2d 115 (1980). Accordingly, the defendant's motion is denied.

For the reasons stated above, we find that the defendant's trial was free of prejudicial error.

No error in trial.

Motion for appropriate relief denied.

Judges ARNOLD and PHILLIPS concur.